UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CURTIS CRUESOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:05CV538 RWS |
| | ) | |
| MERS/MISSOURI GOODWILL | ) | |
| INDUSTRIES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Curtis Cruesoe was employed by Defendant MERS/Goodwill Industries. He filed suit against MERS/Goodwill under Title VII and 42 U.S.C. § 1981(a) alleging employment discrimination based on race and retaliation. He also asserts claims regarding a violation of lack of due process rights and wage and religious discrimination. Defendant MERS/Goodwill has moved for summary judgment. Because Cruesoe has failed to establish any of these claims, I will grant summary judgment to MERS/Goodwill.

### Background

The following facts are taken from MERS/Goodwill's Statement of Uncontroverted Facts, none of which were disputed by Cruesoe,[1] and from the record. "All matters set forth in the

---

[1] Cruesoe filed his response to MERS/Goodwill's Motion for Summary Judgment on June 26, 2006. He did not specifically controvert MERS/Goodwill's Statement of Uncontroverted Facts in that response as required by Local Rule 7-401(E). Cruesoe filed a separate "Motion to Dismiss Defendant's Summary Judgement" in which he does contest the timing of his initial evaluation and states that he received his initial employment evaluation on October 15, 2003 after completing his ninety day probationary period. Cruesoe states that he received "very good" remarks in all categories of this evaluation. Cruesoe also states that the performance appraisal referred to by MERS/Goodwill was Cruesoe's second performance appraisal. This document submitted by Cruesoe does not specifically controvert the 55 uncontroverted facts submitted by MERS/Goowill. At best it controverts one non-material fact.

statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." Ridpath v. Pederson, 407 F.3d 934, 936 (8th Cir. 2005) (citing Local Rule 7-4.01(E) (E.D.Mo. 2004)). Cruesoe is a French-African-American male and a former at-will employee of MERS/Goodwill Industries–a not-for-profit organization that provides employment rehabilitation as well as individual and community services for the underprivileged in Missouri and Illinois. Cruesoe began his tenure with MERS/Goodwill on July 7, 2003, as a Job Developer in the Workforce Development Department, working out of the company's Northwest Plaza location. He was initially assigned to work with a case manager, Jennifer Schinnour. When Schinnour terminated her employment with MERS/Goodwill, Cruesoe was assigned to work with Case Manager Julie Riddle, a coworker. Both Shinnour and Riddle are Caucasian females.

In February of 2004, Benava Brooks, Cruesoe's immediate supervisor, evaluated Cruesoe's work performance to date. Brooks rated Cruesoe's attendance lower than any of his other performance categories. His work quantity was rated as marginal. She informed Cruesoe that she was concerned with his low placement numbers. As a result, Brooks extended his probationary period by three months. Brooks is an African-American.

It was during Cruesoe's tenure with Case Manager Riddle that the incident that gave rise to this case occurred (however the record does not indicate when exactly this incident occurred). The circumstances were these: Riddle asked Cruesoe to perform a job search for a particular client. Cruesoe refused, believing that the client required further personal assessment from Riddle before she would be ready for placement. In response to Cruesoe's refusal and in the presence of the client and other employees, Riddle yelled such phrases as, "No. I won't take the client back,"

and "We're not going to talk about it." Cruesoe concedes that Riddle's outburst was not racial in nature, but it is his belief that her outburst was racially motivated.

In response to the foregoing conduct, Cruesoe discussed Riddle's alleged unprofessional conduct with Brooks by telephone conference in the late summer of 2004. In August of 2004, Cruesoe underwent his first annual employment evaluation, at which time Brooks made clear to Cruesoe that he needed to increase his placement numbers as his were currently much lower than the other Job Developers. Specifically, MERS/Goodwill expected Job Developers to find placements for an average of two to three clients per week. Cruesoe placed nine clients between July 2003 and December 2004. Shortly after his performance evaluation, Cruesoe requested a meeting with Brooks to discuss Riddle's alleged unprofessional conduct towards Cruesoe. Brooks acquiesced and requested that Mark Arens, Vice President of Operations and Brooks' immediate supervisor, also attend the meeting.

At the August 2004 meeting between Cruesoe, Brooks, and Arens, Arens turned the discussion to Cruesoe's recent performance evaluation. While Cruesoe's performance evaluation was not the subject of the meeting, Cruesoe concedes that discussion about Riddle opened the door to Cruesoe's performance since Cruesoe accused Riddle of diverting clients from him, thereby resulting in his low placement numbers, which in turn was the subject of his low performance evaluation. Cruesoe further contends that Arens's "tone and demeanor" were offensive, and that such offensiveness and lack of objectivity was racially motivated.

After this meeting, Cruesoe held another telephone conversation with Brooks about the incident with Riddle. During this conversation, Brooks informed Cruesoe that she was considering the separation of Cruesoe and Riddle as a team. Cruesoe acknowledged that

separation would diffuse the situation. Shortly thereafter Cruesoe was transferred to the North Oaks location, and Riddle was transferred to the Lippman location. Cruesoe's rate of pay did not change as a result of the relocation.

Cruesoe alleges that an analogous situation took place between three unnamed Caucasian male MERS/Goodwill employees and their Caucasian male supervisor, Mike Griesbaum. In that instance, the three employees all complained about the supervisor's strictness and micro-management techniques. As a result, the supervisor was relocated to a different facility.

On September 7, 2004, Cruesoe sent a letter to Lewis Chartock, President of MERS/Goodwill, complaining about Riddle's alleged unprofessional conduct towards him as well as Arens' conduct during the meeting to discuss Riddle's outburst. Cruesoe specifically asked that Arens' "inability to remain objective" and Riddle's lack of respect be further investigated. In response to this letter, Dave Kutchback, MERS/Goodwill's Assistant Chief Executive Officer and Chief of Staff, agreed to a meeting with Cruesoe and Riddle to discuss Riddle's conduct and Arens' handling of Cruesoe's prior complaint involving Riddle. During this September meeting, Riddle was allowed to voice her defense. She stated that she never deliberately diverted clients away from Cruesoe, but that she often had difficulty locating him. Cruesoe believed Kutchback supported Riddle's side during this meeting, and contends that Kutchback's demeanor towards Cruesoe was disrespectful and racially discriminatory. Cruesoe asserts that Kutchback's raising this issue of Cruesoe's placement numbers was inappropriate and was raised for intimidation purposes.

On November 9, 2004, Cruesoe wrote another letter to MERS/Goodwill President Chartock, this time complaining of Riddle's conduct, Arens' handling of the August meeting, and

Kutchback's handling of the September meeting. Kutchback did not agree to meet with Cruesoe again. Cruesoe construes Kutchback's failure to meet with Cruesoe as a violation of the MERS/Goodwill grievance procedure and alleges that it is his impression that the "violation" was racially motivated.

On December 5, 2004, Cruesoe filed a complaint with the Equal Employment Opportunity Commission (EEOC). In response to the question "What is your religion?" on the EEOC questionnaire, Cruesoe answered "not applicable." Cruesoe agrees that at the time he filed the EEOC complaint, he was filing neither a charge of religious discrimination nor one of wage discrimination. On January 13, 2005, Cruesoe received his right to sue letter from the EEOC. On April 5, 2005, Cruesoe filed suit alleging racial discrimination, harassment, and intimidation in his initial complaint. On his July 8, 2005 amended complaint, Cruesoe asserts additional claims of wage discrimination and religious discrimination. On October 5, 2005, Cruesoe filed his second amended complaint alleging retaliation in that he was demoted and transferred.

In August of 2005, Cruesoe received a second transfer to the Lippman Center location as a Recruiter. Cruesoe's rate of pay remained the same. Cruesoe's Case Manager, whose name is not established by the record, was also transferred to a recruiter position at the same time. Both Cruesoe and his Case Manager were the weakest performers in their respective positions. The Case Manager is Caucasian. A Recruiter's responsibilities include conducting client home visits and placing phone calls to clients. Cruesoe received several verbal and written reprimands from Brooks concerning his repeated absences after reassignment as a recruiter. During the next few months, Cruesoe exceeded his allotted vacation and sick leave. Specifically, Cruesoe missed at

least 25 days of work between August 2005 and October 24, 2005.[2]  Brooks issued a written

counseling record on October 24, 2005, in which she advised Cruesoe that if his attendance

problems continued further disciplinary action would result.

Cruesoe submitted a request for, and was granted time off to fix his car.  Shortly

thereafter Cruesoe missed nine successive days of work between January 31, 2006 and February

10, 2006.  MERS/Goodwill's Vice President of Human Resources, Philesa White, contacted

Cruesoe to determine whether these days off qualified as leave under the Family and Medical

Leave Act.  Cruesoe told White that he was not interested in applying for Family and Medical

Leave for his absences.  As a result, on February 24, 2006, Cruesoe was terminated from his

employment with MERS/Goodwill by Brooks and White for his excessive absenteeism.  Brooks

and White are both African-American.

On April 19, 2006, Cruesoe filed a new charge of discrimination alleging his discharge

from MERS/Goodwill was in retaliation for filing suit against the organization and for one

instance of failure to greet Chartock, (the president of MERS/Goodwill).  Cruesoe has not

entered into the record a right to sue letter issued regarding this Charge.  This claim has not been

presented in this case and is not part of this lawsuit.

### *Legal Standard*

In considering whether to grant summary judgment, a district court examines the

"pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[2] In September of 2005, Cruesoe submitted a medical accommodation request to Brooks, claiming that he required a vehicle with more leg/head room to accommodate his large body. Cruesoe did not submit the medical information requested to accompany such an application. Nevertheless, Brooks reduced Cruesoe's home visit requirement from four days a week to the two days he was scheduled to drive his own vehicle.

affidavits, if any ...." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

Direct evidence of employment discrimination is rare, therefore, most cases rely on circumstantial evidence. In the absence of direct evidence of discrimination, courts employ the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(Title VII case).[3] The McDonnell Douglas burden-shifting analysis used in Title VII cases is also applied to employment discrimination claims based on § 1981. Lockridge v. Board of Trustees of University of Arkansas, 315 F.3d 1005, 1010 (8th Cir. 2003).

Under the burden-shifting analysis, the plaintiff must first establish a prima facie case of

---

[3] See Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1332 (8th Cir. 1996)(applying McDonnell Douglas to an ADEA claim); Tart v. Hill Behan Lumber Co., 31 F.3d 668, 671 (8th Cir. 1994)(applying McDonnell Douglas to an MHRA claim).

intentional discrimination.  McDonnell Douglas, 411 U.S. at 802;  Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994).  If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  411 U.S. at 802.  The defendant need not persuade the court that the articulated reason was the basis of the employer's action; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993).

Upon the proffer of such evidence, the presumption of discrimination established by the prima facie case "simply drops out of the picture."  Id. at 510-11.  The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination.  Aucutt,  85 F.3d at 1316.  A rejection of the employer's proffered non-discriminatory reason by itself or combined with elements of the prima facie case may be enough to establish, but does not compel, an inference of intentional discrimination.  St. Mary's Honor Center, 509 U.S. at 511.

The burden of proving discrimination remains on the plaintiff at all times.  Id. at 515-16. It is not enough to merely discredit defendant's articulated reason for the adverse employment action.  A plaintiff must always establish that the real reason for defendant's action was impermissible discrimination.  Id.;  see also Huston v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995).  To avoid summary judgment, a plaintiff must present evidence that, when viewed in its entirety: (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a determinative factor in the adverse employment decision.  Rothmeier v. Investment Advisers, Inc., 85 F.3d

1328, 1336-37 (8th Cir. 1996).

### *Discussion*

Cruesoe's claims arise under Title VII and 42 U.S.C. § 1981 and include racial

discrimination based on harassment and disparate treatment under Title VII and § 1981,

retaliation under Title VII and § 1981, and wage and religious discrimination. "In analyzing

intentional discrimination claims, brought under § 1981, we apply the same standards as we would

apply to similar Title VII claims." Reedy v. Quebecor Printing Eagle, Inc., 333 F.3d 906, 907

(8th Cir. 2003). As noted previously, undisputed facts are deemed admitted. Ridpath, 407 F.3d

at 936.

### *Discrimination*

Cruesoe's claims of racial discrimination are based on MERS/Goodwill's response to

complaints made by Cruesoe against a coworker. The incident giving rise to Cruesoe's multiple

verbal and written complaints took place in mid-2004, when Cruesoe's coworker yelled certain

phrases at him including "No. I won't take the client back," and "we're not going to talk about

it," in the presence of a client and other coworkers. These comments were made in response to

Cruesoe's refusal to perform a job search for a client because he felt the client required further

assessment. Because Cruesoe does not offer any direct evidence of discrimination, his claims will

be analyzed under the burden-shifting framework of McDonnell Douglas.

### *Harassment claim*

To establish a prima facie case of harassment/hostile work environment, Cruesoe must

establish: (1) he is a member of a protected group; (2) he was subject to unwelcome harassment;

(3) the harassment was based upon race; (4) the harassment affected a term, condition, or

privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial measures to end the harassment. <u>Willis v. Henderson</u>, 262 F.3d 801, 808 (8th Cir. 2003).

Cruesoe alleges harassment and intimidation in that his complaints against his coworker, Julie Riddle, were handled improperly, his job performance was raised as an issue at several of his meetings to discuss Riddle's conduct, and that he was reprimanded for taking time off that he had been granted to fix his car. "Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive enough to alter the conditions of the plaintiff's employment and create an abusive working environment." <u>Howard v. Burns Bros., Inc.</u>, 149 F.3d 835, 840 (8th Cir. 1998). To satisfy this high threshold of actionable harm, a plaintiff must show that his workplace "was permeated with discriminatory intimidation, ridicule, and insult." <u>Canady v. Walmart Stores, Inc.</u>, 440 F.3d 1031, 1035 (8th Cir. 2006). A court is required to look at all of the attendant circumstances, including the frequency of the purported harassment; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance. <u>Willis</u>, 262 F.3d at 809. "In assessing the hostility of an environment, we look to the totality of the circumstances." <u>Stacks v. Southwestern Bell Yellow Pages, Inc.</u>, 27 F.3d 1316, 1327 (8th Cir. 1994).

There is no dispute that Cruesoe, a French-African-American, is a member of a protected class. Whether he has submitted evidence of unwelcome harassment because of his race is a question before me. In response to Riddle's outbursts against Cruesoe in front of his client and coworkers, Cruesoe complained by telephone to his immediate supervisor, Benava Brooks. After this conference, another meeting was set up at Cruesoe's request between Brooks, Cruesoe, and

Riddle. Subsequent to this meeting, Cruesoe asked for another meeting with Brooks to discuss Riddle's conduct. Brooks acquiesced, and at her request the meeting was attended by her supervisor, Arens. At the meeting, Arens raised the issue of Cruesoe's job performance to date. After this meeting, Cruesoe requested another meeting by letter to MERS/Goodwill president Chartock. In response to the letter, assistant CEO Kutchback held a meeting with Riddle and Cruesoe. At the meeting, Kutchback allowed Riddle to voice her defense, and according to Cruesoe, seemed to side with Riddle. Cruesoe believed Kutchback's position at the meeting was disrespectful and racially discriminatory. This allegation is conclusory. Cruesoe does not offer any evidence of what was actually said or done at this meeting. Cruesoe requested yet another meeting by letter to president Chartock regarding the meeting with Kutchback. This time, no meeting was set up.

The conduct by MERS/Goodwill employees and supervisors, as discussed above, does not constitute evidence that it was motivated by Cruesoe's race. This conduct does not rise to the level of harassment as defined by case law. See Howard, 149 F.3d at 840. While it is undisputed that MERS/Goodwill employees and supervisors were aware of the complained of conduct, as Cruesoe raised the problematic issues to attention through repeated meetings, telephone calls, and letters, Cruesoe has not established that MERS/Goodwill failed to take prompt and effective remedial measures to end the alleged harassment. MERS/Goodwill set up not less than four meetings and telephone conferences to discuss Riddle's conduct, and the responses of MERS/Goodwill supervisors at these meetings. Brooks transferred Cruesoe and Riddle to different locations and assigned Cruesoe a different Case Manager to work with in response to his repeated complaints. Cruesoe acknowledged that this response was one way to deal with the

situation.

Cruesoe further claims that he was subject to unwelcome harassment and intimidation in that he was reprimanded for taking leave to repair his car after he had already been granted the time off to do so. A court must look to the totality of the circumstances to determine if the conduct complained of is so severe or pervasive as to alter the conditions of Cruesoe's employment and so create evidence of an abusive working environment. See Id.; Stacks, 27 F.3d at 1327. Cruesoe missed 25 days of work between August 2005 and October 24, 2005. He exceeded his allotted vacation and sick leave. Then, in January of 2006, Cruesoe applied for and was granted time off to fix his car. Between January 31, 2006 and February 10, 2006 Cruesoe missed nine successive days of work, presumably to fix his car. Even if such a reprimand was unwarranted by the facts, there is no evidence presented that the reprimand complained of altered the conditions of Cruesoe's employment or created an abusive working environment. Nor has Cruesoe presented any evidence that the reprimand was motivated by his race.

In response to MERS/Goodwill's summary judgment motion, Cruesoe must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Cruesoe has failed to provide any factual evidence in support of this claim for harassment and intimidation beyond his own speculation. Based on the foregoing, summary judgment in favor of MERS/Goodwill is warranted on Cruesoe's harassment and intimidation claim.

*Disparate Treatment claim*

To establish a *prima facie* case for a disparate treatment claim of racial discrimination, Cruesoe must show that: (1) he is a member of a protected class; (2) he was meeting the legitimate expectations as to his duties; (3) he suffered an adverse employment action; and (4)

circumstances give rise to an inference of discrimination because similarly situated employees, who were not members of the protected group, were treated differently. Gilooly v. Mo. Dept. of Health and Senior Services, 421 F.3d 734, 737-739 (8th Cir. 2005).

As stated previously, there is no dispute that Cruesoe is a member of a protected class. Cruesoe contends that he was meeting the legitimate expectations as to his duties. In support of his contention Cruesoe argues that at all times he conducted himself in a professional manner and also took on additional job duties. The evidence shows that Cruesoe, as a Job Developer, was expected to find job placements for an average of two to three clients per week. According to the undisputed facts of the case, Cruesoe was aware of this placement expectation. It is also undisputed that while most Job Developers met this goal, Cruesoe placed a total of nine clients between July 2003 and December 2004. His performance as a Job Developer was clearly below the legitimate expectations of his employer.

Even if Cruesoe had been meeting the legitimate expectations of his employer, he failed to establish the remaining two prongs of a prima facie case. A claim of disparate treatment requires an adverse employment action. Cruesoe contends that the relocation to the North Oaks location qualifies as such an adverse action. However, Cruesoe's rate of pay remained the same. Cruesoe himself admitted the relocation of himself and Riddle was one way to solve their dispute.

In Montandon v. Farmland Industries, Inc., the plaintiff and several of his coworkers were transferred to a work location in a different city. 116 F.3d 355 (8th Cir. 1997). The court found that the plaintiff had not suffered an adverse employment action because a "transfer that does not involve demotion in form or substance, or change in pay or working conditions, does

not constitute adverse employment action." <u>Id.</u> Cruesoe and Riddle, his Case Manager, were transferred to different work locations. There is no evidence presented that Cruesoe suffered a reduction in pay or working conditions because of his transfer, nor is there evidence that the transfer resulted in a demotion. Therefore, Cruesoe did not suffer an adverse employment action.

"An employee suffers an adverse employment action when there is a tangible change in duties or working conditions constituting a material employment disadvantage." <u>Baucom v. Holiday Companies</u>, 428 F.3d 764, 767 (8th Cir. 2005). Cruesoe has offered no evidence that his transfer, however involuntary, resulted in a material employment disadvantage. In fact, his placement numbers increased following his relocation, and he no longer worked on a team with Riddle. For the foregoing reasons I find that the adverse employment action prong of the racial discrimination test has not been met.

Even if plaintiff Cruesoe could establish an adverse employment action, establishment of a prima facie case of disparate treatment requires a finding that circumstances give rise to an inference of discrimination because similarly situated employees who were not members of the protected group were treated differently.

In an attempt to establish this element, Cruesoe points to a situation in which three unnamed Caucasian male employees complained about their Caucasian male supervisor, Mike Griesbaum, alleging the supervisor was overly strict and micro-managed his employees. As a result of these complaints, the supervisor was transferred. This situation is not sufficiently similar to the case at hand to raise an inference of discrimination. In the situation Cruesoe references, three employees complained about their supervisor. In the situation at hand Cruesoe

was the only one to complain, and he complained about his coworker, not his supervisor. Further, while Cruesoe complains about statements made by his coworker, the three employees in the comparative situation complain about the overall management techniques of their supervisor. Finally, Cruesoe actually admitted the transfer was one way to solve his problem. For the foregoing reasons, I find that Cruesoe did not establish a claim for disparate treatment and accordingly grant MERS/Goodwill's motion for summary judgment on this claim.

Even if Cruesoe could establish a prima facie case of disparate treatment, he still cannot meet his burden of proving that MERS/Goodwill's legitimate, non-discriminatory reason for the transfer was pretextual. MERS/Goodwill claims Cruesoe was transferred based on his low placement numbers as a Job Developer. Cruesoe received multiple warnings about his low placement numbers, and he concedes that his numbers were lower than what was expected of him. Furthermore, the weakest Case Manager, an unnamed Caucasian male, was transferred at the same time. Based on the foregoing facts, I find that Cruesoe cannot establish MERS/Goodwill's proferred legitimate, nondiscriminatory reason for the transfer was pretextual.

*Retaliation claims*

To establish a prima facie case of retaliation, Cruesoe must show that he engaged in protected conduct, that he suffered an adverse employment action, and that the adverse action was causally linked to the protected conduct. Putman v. Unity Health System, 348 F.3d 732, 737 (8th Cir. 2003)(quotations and citations omitted) (Title VII). This same standard applies to those retaliation claims brought under § 1981. Stevens v. Saint Louis Univ. Med. Ctr., 97 F.3d 268, 270 (8th Cir. 1998). Although contesting an unlawful employment practice is protected conduct, Title VII does not insulate an employee from discipline for violating the employer's

rules or disrupting the workplace. <u>Kiel v. Select Artificials, Inc.</u>, 169 F.3d 1131, 1136 (8th Cir. 1999). Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation. <u>Id.</u> Cruesoe must also show that MERS/Goodwill's legitimate, nondiscriminatory reason for its employment decision was a pretext for retaliation. <u>Putman</u>, 348 F.3d at 737.

Recently, the U.S. Supreme Court held that the particular circumstances of a given situation must be taken into account in determining whether a reasonable employee would have found the employer's conduct was materially adverse in an action for retaliation. <u>Burlington Northern & Sante Fe Ry. Co. v. White</u>, 126 S.Ct. 2405, 2415 (U.S. 2006). The Supreme Court set forth examples of conduct which might generally not constitute a materially adverse employment action, but would be considered materially adverse in particular circumstances. In order to show that an adverse employment action occurred under 42 U.S.C. § 2000e–3, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Id.</u> at 2415 (quotations omitted). In deciding whether an action would be adverse to a "reasonable employee," the fact finder must consider the specific context of the employment action. <u>Id.</u> For example, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children." <u>Id.</u>

Cruesoe alleges several instances of retaliation under Title VII and § 1981. The first involved MERS/Goodwill's transfer of Cruesoe to another MERS/Goodwill location. The second involved his alleged "demotion" from Job Developer to Recruiter during his transfer to

the Lippman Center. Cruesoe's final retaliation claim involves the handling of his complaints by MERS/Goodwill management.

Cruesoe first alleges retaliation in that he was transferred from the Northwest Plaza location of MERS/Goodwill to the North Oaks location. There is no dispute that Cruesoe's complaints to MERS/Goodwill supervisors regarding a coworker's conduct constituted protected conduct. Likewise, there is no dispute that Cruesoe's complaints in fact caused, at least indirectly, his transfer. Finally, Cruesoe must establish that his transfer constituted an adverse employment action.

Cruesoe was transferred from the Northwest Plaza location to the North Oaks location after he lodged several complaints against a coworker. However, a change in position does not normally constitute an adverse employment action where there is no reduction in pay or benefits. Curby v. Solutia, Inc., 351 F.3d 868, 873 (8th Cir. 2003) (no adverse employment action where plaintiff's position was changed from vice president of one division to vice president of another division). Cruesoe has not alleged or submitted evidence that his transfer resulted in a decrease of pay or benefits. Nor has he presented any evidence showing that his transfer would be adverse to a reasonable employee under White. He has not submitted any evidence of undue hardship based on his transfer.

Furthermore, MERS/Goodwill had a legitimate, nondiscriminatory reason to transfer Cruesoe–to separate him from Riddle. Cruesoe's allegation that this transfer was based on his race is neutralized by the fact that MERS/Goodwill also transferred Riddle, a Caucasian. Finally, Cruesoe himself conceded that his transfer was one way to resolve the issue. For these reasons, I find that Cruesoe did not make a prima facie case of retaliation in regards to his transfer to the

North Oaks location.

Cruesoe next alleges retaliation in that he was demoted from Job Developer to Recruiter. Again, there is no dispute that Cruesoe's complaints about Riddle's conduct and his filing of the current lawsuit constitute protected activities. Cruesoe further claims that his transfer to the Lippman Center location constituted a demotion, and as such, was an adverse employment action. However, there is no evidence that Cruesoe's transfer constituted a demotion. His rate of pay remained the same after the transfer. While the transfer did involve a change of job title from Job Develop to Recruiter, a change in position does not constitute an adverse employment action where there is no reduction of pay or benefits. <u>Curby</u>, 351 F.3d at 873. Because Cruesoe has failed to submit evidence or even allege a reduction of pay or benefits, the transfer to the Lippman Center location does not constitute an adverse employment action. Nor has he submitted evidence that his change of position would be considered adverse by a reasonable employee.

Even if Cruesoe could establish a prima facie case of retaliation, he still cannot meet his burden of proving that MERS/Goodwill's legitimate, non-discriminatory reason for the transfer was pretextual. MERS/Goodwill claims Cruesoe was transferred based on his low placement numbers as a Job Developer. Cruesoe received multiple warnings about his low placement numbers, and he concedes that his numbers were lower than what was expected of him. Furthermore, the weakest Case Manager, an unnamed Caucasian male, was transferred at the same time. Based on the foregoing facts, I find that Cruesoe cannot establish MERS/Goodwill's proferred legitimate, nondiscriminatory reason for the transfer was pretextual.

Finally, Cruesoe alleges retaliation in that MERS/Goodwill management did not address

or resolve Cruesoe's complaints against Riddle in an appropriate manner. However, improper

handling of a grievance does not constitute an adverse employment action. Greaser v. Mo. Dept.

of Corrections, 145 F.3d 979, 985 (8th Cir. 1998). Therefore, I find that Cruesoe did not

establish a claim of retaliation based on the alleged mishandling of his complaints.

Based on the foregoing reasons, I will grant summary judgment to MERS/Goodwill on

Cruesoe's claims of retaliation.

*Wage, Religion, and Retaliation Claims Barred by Cruesoe's Failure to Exhaust His*

*Administrative Remedies*

Central to the statutory scheme provided by Title VII is the requirement that a plaintiff

exhaust his administrative remedies by filing a charge with the EEOC. Shannon v. Ford Motor

Co., 72 F.3d 678, 685 (8th Cir. 1996)(quotations and citations omitted). The purpose of the

exhaustion requirement is to allow the EEOC the opportunity to investigate discriminatory

practices and perform its role of obtaining voluntary compliance and promote conciliatory

efforts. Id. In order to exhaust administrative remedies, a Title VII plaintiff must timely file

charges with the EEOC and obtain from the EEOC, a "right to sue letter." Id. See also 42

U.S.C. § 2000e-5 (b), (c), and (e). After exhausting his administrative remedies, a plaintiff

obtains the right to file a civil action in federal court based upon the employment discrimination

claim alleged in the EEOC charge, along with allegations that are "'like or reasonably related'"

to that claim. Id. (quoting Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th

Cir. 1994)). A failure to exhaust Title VII's administrative remedies, however, bars the plaintiff

from filing a civil lawsuit. Williams, 21 F.3d at 222.

MERS/Goodwill seeks summary judgment on Cruesoe's claims of religious and wage

discrimination. MERS/Goodwill asserts that these claims were not administratively exhausted as required by law before the filing of this lawsuit. Courts will liberally construe discrimination claims made by *pro se* litigants. <u>Shannon</u>, 72 F.3d at 685. However, there is a great difference between "liberally reading a claim which lacks specificity ... and inventing *ex nihilo* a claim which was simply not made" by the plaintiff. <u>Id</u>. Claims of religious and wage discrimination are separate and distinct from a claim of race discrimination.

In his December 5, 2004 Charge with the EEOC, Cruesoe did not raise claims of religious or wage discrimination. In fact, in response to the question "What is your religion?" on the EEOC questionnaire, Cruesoe answered "not applicable." Section A of the EEOC questionnaire requests the plaintiff identify the basis of discrimination he is alleging. Cruesoe alleged racial discrimination, but did not allege religious or wage discrimination. Cruesoe further conceded that at the time of his initial EEOC filing he was not asserting claims for either wage discrimination or religious discrimination.

It was not until Cruesoe's amended complaint that he alleged religious and wage discrimination. However, based on the undisputed facts submitted by MERS/Goodwill, Cruesoe never filed a Charge with the EEOC and did not obtain a right to sue letter based upon wage and religious discrimination as alleged in his amended complaint. Because Cruesoe did not exhaust his administrative remedies by obtaining a right to sue letter from the EEOC on his claims of wage and religious discrimination, MERS/Goodwill asserts that these claims are barred. I agree. Therefore, I will grant summary judgment to MERS/Goodwill on Cruesoe's claims of wage and religious discrimination.

It is undisputed that Cruesoe did not enter into the record a right to sue letter for his

claim of retaliation for his August 2005 transfer to the Lippman Center. MERS/Goodwill asserts that even if Cruesoe could establish retaliation for these two claims, they would still be barred because of his failure to exhaust his administrative remedies with respect to these claims. I agree.

Summary judgment will be granted for MERS/Goodwill on Cruesoe's wage, religion, and retaliation claims.

*Due Process claim*

Cruesoe alleges that MERS/Goodwill violated his right to due process by failing to comply with the company's self-imposed administrative procedures.

It is undisputed that Cruesoe was an at-will employee. He did not have a written employment contract and there is no evidence that he was ever told by MERS/Goodwill that he could only be terminated for cause.

To establish a procedural due process violation, a plaintiff must demonstrate that he has a protected property or liberty interest at stake and that he was deprived of that interest without due process of law. Hopkins v. Saunders, 199 F.3d 968, 975 (8th Cir. 1999). A protected property interest exists where a plaintiff has a "legitimate claim of entitlement" to a benefit that is derived from a source such as contract or state law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). A plaintiff has a protected property interest in his employment if he can show "that he could have been fired only for good cause." Spitzmiller v. Hawkins, 183 F.3d 912, 916 (8th Cir. 1999).

Under Missouri law, an employee is considered to be "at-will" unless he is subject to a contract setting the duration of his employment or delineating the reasons for which he can be

fired.  Callantine v. Staff Builders, Inc., 271 F.3d 1124, 1130 (8th Cir. 2001).  "At-will"

employees can be terminated at any time without cause.  Paul v. Farmland Indus., Inc., 37 F.3d

1274, 1276 (8th Cir.1994).

According to the undisputed facts of the case, Cruesoe was an at-will employee.  Under

Missouri law Cruesoe could have been dismissed at any time by MERS/Goodwill without cause.

Cruesoe argues that MERS/Goodwill violated its own policies when it failed to follow its own

self-imposed administrative procedures in compliance with company policies.  The record does

not indicate what these company policies were.  The record also does not indicate what

administrative procedures were violated.

Due process provisions are for the protection of life, liberty, and property as against State

government action through executive, legislative, judicial or administrative authority, and are not

applicable herein to the acts of individuals affecting the rights of other individuals.  Junkins v.

Local Union No. 6313, Comm. Workers of Am., 263 S.W.2d 337 (Mo. 1954) (union members

against union).  Fed. Nat. Mortg. Ass'n v. Howlett, 521 S.W.2d 428 (Mo. 1975) (applying

Junkins standard to Missouri Constitution Art. I, s 10).  MERS/Goodwill is not a State

government entity.  MERS/Goodwill is a non-governmental private organization.  For this

reason, Cruesoe's due process claim against MERS/Goodwill must fail.  Finally, Cruesoe does

not argue that he has been deprived of a benefit he is entitled to under state law or a contract.

Based on the foregoing analysis, it is clear that Cruesoe has no property interest which would

entitle him to relief for a due process violation.  Because I find that Cruesoe did not have any

right to due process under the Fourteenth Amendment,  I will grant MERS/Goodwill summary

judgment on that claim.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant MERS/Goodwill's motion for summary judgment [#75] is **GRANTED**.

**IT IS FURTHER ORDERED that** Plaintiff Curtis Cruesoe's Motion to Dismiss Defendant's Motion for Summary Judgment [#80] is **DENIED**.

**IT IS FURTHER ORDERED that** Plaintiff Curtis Cruesoe's Motion to Dismiss [#81] is **DENIED**.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 11th day of October, 2006.